# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | CASE NO. 6:10-bk-00578 |
| **SHERWOOD FARMS, INC.,** | CHAPTER 11 |
| Debtor. | <u>EMERGENCY RELIEF REQUESTED</u> |
| _____/ | <u>HEARING REQUESTED BY 1/21/10</u> |

**EMERGENCY MOTION OF DEBTOR SEEKING ORDER: (A) AUTHORIZING THE DEBTOR TO OBTAIN POST PETITION FINANCING FROM THE DIP LENDER ON AN INTERIM BASIS PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE; (B) PROVIDING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER; AND (C) APPROVING THE FORM AND METHOD OF NOTICE THEREOF AND REQUEST <u>FOR EMERGENCY PRELIMINARY HEARING</u>**

**AND**

**CERTIFICATE OF NECESSITY OF <u>REQUEST FOR EMERGENCY PRELIMINARY HEARING</u>**

**SHERWOOD FARMS, INC.**, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), by and through its undersigned counsel, and pursuant to sections 105 and 364 of the U.S. Bankruptcy Code, 11 U.S.C. 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014, *Federal Rules of Bankruptcy Procedure*, hereby files this motion requesting authority to obtain credit, incur debt, and grant liens and requests an emergency preliminary hearing on the motion (the "Motion").

      A.      The Motion seeks authorization and approval of the debtor-in-possession loan (the "DIP Loan"), on the terms consistent with those set forth in the Commitment Letter (the "Commitment Letter"). A copy of the Commitment Letter is attached as **<u>Exhibit "A"</u>** to the

original of the Motion and may be obtained upon request to the undersigned counsel and has been served upon the secured lenders and the United States Trustee with the Motion. The "DIP Lender" shall be Pentagon Apollo, Ltd. ("Pentagon"). The advances made under the Commitment Letter shall be available, among other things, to pay Debtor's ordinary course ongoing operating expenses and administrative expenses. Among other conditions precedent to the DIP Loan is that the Court shall have entered an order in form and content reasonably satisfactory to the DIP Lender.

      B.    The Motion seeks an order:

      a.    That the allowed claims (the "DIP Superpriority Claim") of the DIP Lender under the DIP loan documents shall have priority, as provided for in Section 364(c) of the Bankruptcy Code over any and all other administrative expenses, except for a carve-out for unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) (the "Carve-Out");

      b.    That the liens of the DIP Lender shall be, and be deemed immediately secured by, first-priority liens (the "DIP Liens"), as provided for in Sections 364(c) and (d) of the Bankruptcy Code, upon all the Debtor's personal property and all of the Debtor's real property, contract rights, general intangibles, property and proceeds of any kind, created or arising on or after the Petition Date (the "Property");

      c.    That a hearing (the "Hearing"), pursuant to Bankruptcy Rule 4001 shall be held on the Motion for this Court to consider entry of an order (the "DIP Loan Order") approving the DIP Loan, on an interim basis, as set forth herein and in the Commitment Letter. A copy of

the proposed DIP Loan Order is attached to the original of this Motion and filed with this Court as **Exhibit "B"**.

In support of its Motion, the Debtor respectfully represents as follows:

## BANKRUPTCY RULE 4001 SUMMARY OF RELIEF REQUESTED

Pursuant to Bankruptcy Rule 4001(c)(1)(B), a concise statement of material provisions of the proposed Commitment Letter and form of DIP Loan Order is as follows:

A.    **Interest Rate**:    A rate per annum equal to seven percent (7%) prior to any default, but shall be twelve percent (12%) after default.  The Debtor shall pay an additional loan fee of two (2) percentage points of the maximum principal amount of the Loan, which fee will be fully earned, and payable in full at the time of Closing. (*See* p. 1, Commitment Letter).

B.    **Maturity**:    The earlier of (i) the first anniversary of the Effective Date (the later of: (a) the date upon which the Loan is approved by Order of the Bankruptcy Court; and (b) the date upon which all conditions to making the Loan herein are satisfied, including but not limited to, the delivery of all required loan documents); (ii) the date upon which the Case is (A) dismissed or (B) converted to a case under Chapter 7 of the U.S. Bankruptcy Code; or (iii) the Effective Date of any confirmed Chapter 11 plan for Debtor or Sherwood Investments Overseas Limited ("SIO").  (*See* p. 1, Commitment Letter).

C.    **Events of Default**:    Failure to make payments when due, the appointment of a Chapter 11 Trustee, dismissal of this case or the SIO case, or conversion of this  case or the SIO case to Chapter 7.

D. **Liens**:   The DIP Lender shall have first priority liens under Sections 364(c) and (d) on the Property as identified in the DIP Loan Order and Commitment Letter.  (*See* p. 2, Commitment Letter).

E. **Borrowing Limits**:   Up to the principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00). (*See* p. 2, Commitment Letter).

F. **Borrowing Conditions**:   Debtor agrees that DIP Lender's obligation to open and fund the DIP Loan is conditioned on: (1) entry of a written order by the Bankruptcy Court approving the DIP Loan, to be entered no later than February 26, 2010; (2) existence of a loan agreement, promissory note, financing statements, and such other documents and agreements as Pentagon or its counsel may require to evidence and secure the DIP Loan; (3) the DIP Loan Order shall provide that Pentagon's lien on the collateral shall be, at all times during the life of the DIP Loan, a first priority lien, superior in dignity and priority to any existing or future liens on the collateral as set forth in Paragraph 3 of the Commitment Letter; (4) all amounts extended by Pentagon shall be entitled to respective super priority administrative expenses status, pursuant to Bankruptcy Code § 364(c), subject only to unpaid U.S. Trustee fees; and (5) Debtor shall have prepared a budget for the use of the DIP Loan funds, which budget shall have been approved by Pentagon (the "Budget").  (*See* p. 2-3, Commitment Letter).

G. **Priming Liens Under Section 364(d)**:   The DIP Lender shall have, at all times during the life of the DIP Loan, a first priority lien, superior in dignity and priority to any existing or future liens on the collateral. (*See* p. 2, Commitment Letter).

H.   **Adequate Protection**:   Debtor asserts that the preservation of the ongoing business and ability to keep the Property operating provide adequate protection to the mortgage holder.

## Jurisdiction

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b).

2.      The Debtor continues to operate as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code and this Court's order authorizing it to continue doing business as a debtor-in-possession.

## Background

3.      On January 15, 2010, Debtor filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code ("Petition Date").  No trustee has been appointed.  The Debtor continues to operate its business as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.  (Doc. No. 1).

4.      On this same day, Sherwood Investments Overseas Limited, Inc. ("SIO"), which is the sole owner of SFI, also filed its petition for reorganization under Chapter 11 of the Code in the case styled, *In re Sherwood Investments Overseas Limited, Inc.*, Case No. 6:10-bk-00584.

5.      The Debtor was established in 1998 and has developed several greenhouses for the purpose of growing orchids, which are then sold to wholesalers.

6.      The general deterioration in the U.S. Economy has caused a decline in overall consumer spending and, thus, a reduction in sales for Debtor.  As such, the Debtor defaulted on its primary mortgage loan.  Furthermore, due to the recent freezing weather, Debtor's sales came

to a virtual halt, while heating costs have soared from an average of $16,000.00 monthly to $20,000.00 weekly, for the last several weeks.

7. In addition, the Debtor had previously been supplied operating capital by SIO. However, from 2007 through 2009, SIO suffered significant losses due to breaches of contract and representation suffered by SIO at the hands of ABN AMRO Bank PLC ("ABN") and the, Royal Bank of Scotland ("RBS") and its misappropriation of SIO's funds.

8. As of the Petition Date, the Debtor owned approximately 238 acres of land in Groveland, Florida. This property consists of approximately 150 acres of usable land and features 16 acres of greenhouses. Within the greenhouses, SFI has approximately 800,000 orchids. Additionally, SFI has several older model vehicles, including three refrigerated 21 foot trucks, 1 smaller non-refrigerated truck, a dump truck and two company vans. Although the Debtor is uncertain as to the current market value of its assets, an appraisal conducted in 2007 valued the facility and inventory at approximately $12,000,000.00.

9. Prior to the Petition Date, the Debtor owed approximately $5,000,000.00 to Old Southern Bank, which claims a first priority security interest in the Debtor's real property and cash collateral, as defined in the Debtor's Case Summary. The Debtor owed approximately $2,000,000.00 to Pentagon Capital Management, PLC, which claims a second priority security interest in the Debtor's real property and cash collateral. Finally, the Debtor owed approximately $4,800,000.00 to SIO, which claims a third priority security interest in the Debtor's real property.

## Relief Requested

### A. Detailed Summary of Commitment Letter

10.    By this Motion, the Debtor seeks the issuance and entry of an Order of this Court granting the Debtor the authority to obtain debtor-in-possession financing under the terms and provisions of the Commitment Letter and DIP Loan documents, as defined in the Commitment Letter.  The salient provisions of the Commitment Letter are as follows:

a.    **Borrower**:    Sherwood Farms, Inc.

b.    **DIP Lenders**:    Pentagon Apollo, Ltd.

c.    **DIP Loan**:    A first priority secured credit facility to be provided to the Borrower with a maximum credit amount of Three Hundred Fifty Thousand Dollars ($350,000.00).  The DIP Lender shall have, at all times during the life of the DIP Loan, the first priority lien, superior in dignity and priority to any existing or future liens on the collateral.

d.    **Maturity of the DIP Loan**:    The earlier of (i) the first anniversary of the Effective Date; (ii) the date upon which the Case is (A) dismissed or (B) converted to a case under Chapter 7 of the U.S. Bankruptcy Code; or (iii) the Effective Date of any confirmed Chapter 11 plan in the Case involving Debtor or SIO.

e.    **Use of Proceeds**:    The DIP Loan shall be used, among other things, to pay (i) Debtor's ordinary course ongoing operating expenses; and (ii) certain administrative fees and expenses approved by the Court.  Such expenses shall be included in the Budget prepared by Debtor and approved by Pentagon.

f.    **Security**:    Except for the Carve-Out, the DIP Loan shall be secured in accordance with 364(d) of the Bankruptcy Code by a first priority mortgage lien upon and security interest in all assets (whether real or personal) of the Debtor and SIO, which liens and security interests shall include, but not by way of limitation, a first priority security interest in all

litigation claims, demands, rights of action, choses in action, and insurance claims of any type or description held by SIO and by a first priority mortgage lien upon and security interest in all real and personal property owned by the Debtor.

g. **Carve-Out**: As discussed in more detail below, the DIP Lenders' liens will be subject to a Carve-Out for certain U.S. Trustees' fees and Clerk of the Bankruptcy Court fees.

h. **Interest Rate**: A rate per annum equal to seven percent (7%) prior to any default, but twelve percent (12%) after default. The Debtor shall pay an additional loan fee of two (2) percentage points of the maximum principal amount of the Loan, which fee will be fully earned, and payable in full at the time of Closing.

i. **Mandatory Repayments**: The obligations are due and payable on the Maturity Date.

j. **Conditions to Closing and Funding**: Debtor agrees that DIP Lenders' obligation to open and fund the DIP Loan is conditioned on: (1) entry of a written order by the Bankruptcy Court approving the Loan, to be entered no later than February 26, 2010; (2) A loan agreement, promissory note, financing statements, and such other documents and agreements as Pentagon or its counsel may require to evidence and secure the DIP Loan; (3) the DIP Loan Order shall provide that Pentagon's lien on the Collateral shall be, at all times during the life of the DIP Loan, a first priority lien, superior in dignity and priority to any existing or future liens on the Collateral as set forth in the Commitment Letter; (4) all amounts extended by Pentagon shall be entitled to respective super priority administrative expenses status pursuant to Bankruptcy Code § 364(c), subject only to unpaid U.S. Trustee Fees; and (5) Debtor shall have

prepared the Budget for the use of the Loan funds, which Budget shall have been approved by Pentagon.

k.     **Events of Default**:  Failure to make payments when due, the appointment of a Chapter 11 Trustee, dismissal of this case or the SIO case, or conversion of this case or the SIO case to Chapter 7.

**B.     The Critical Need for the DIP Loan**

11.     The Debtor is in need of funds to cover: (i) working capital shortfalls; (ii) required utility payments; and (iii) staff payroll and associated payroll taxes.  The Debtor has been forced to lay off four workers as of the week of January 18, 2010.   Continued operation and maintenance of the Debtor's Property is necessary to preserve the going concern value of same, which the Debtor believes accounts for the substantial portion of the current value of the estate.

12.     The Debtor needs these additional funds to pay these post-petition, ordinary course expenses related to its business.

**C.     Approval Under Sections 364(c)(2) and (d) of the Bankruptcy Code.**

13.     Section 364 of the Bankruptcy Code allows a debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business; and (c) obtain credit with specialized priority or with security.   If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, or combination of the foregoing.

14.    Section 364(d)(1) of the Bankruptcy Code provides that a court may authorize a debtor to incur post-petition debt on a senior or "priming" basis if: (1) the debtor is unable to obtain credit otherwise and (b) there is "adequate protection" of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. *See* 11 U.S.C. § 364(d)(1).

15.    As noted above, the need for the Debtor to obtain financing is critical.  Further, the evidence at the Hearing will show that a working capital facility of the type needed in this Chapter 11 case could not have been obtained on any other basis.

16.    The Debtor proposes to obtain financing under the DIP Loan, the DIP Loan documents and the DIP Loan Order by seeking, pursuant to section 364(c)(1) of the Bankruptcy Code, to provide for a DIP Superpriority Claim to Pentagon.

17.    In addition, the Debtor is seeking authority, pursuant to section 364(d) of the Bankruptcy Code, to prime any and all valid liens which may exist on the Property. Accordingly, Debtor seeks authority to grant adequate protection to any entity whose liens or claims are being primed by the DIP Loan (the Debtor does not concede that any entity is entitled to adequate protection).

**D.    The Debtor's Lack of Alternative Financing.**

18.    It is well recognized that the appropriateness of a proposed post-petition financing facility must be considered in light of the current market conditions.  *See* In re *Lyondell Chem Co.*, No. 09-10023 (Bankr. S.D.N.Y. 2009).  Indeed, courts often recognize that where there are few lenders likely able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for

financing." *See* In re *Sky Valley, Inc.*, 100 B.R. 107, 113. (Bankr. N.D. Ga. 1988). Rather, a debtor must demonstrate that it made a reasonable effort to seek credit from other sources available under Section 364(a) and (b). *See* In re *Plabell Rubber Prods., Inc.*, 137 B.R. 897, 899-900 (Bankr. N.D. Ohio 1992).

19. Despite its diligent efforts in seeking unsecured or secured credit, the Debtor was unable to secure any additional debtor-in-possession financing from any source, other than the DIP Loan. Accordingly, the Debtor submits that the terms of the Commitment Letter are the only terms available to the Debtor.

**E.    Use of the DIP Loan Proceeds**

20. The Debtor requests that the DIP Loan Order will provide that, upon finalizing and executing the DIP Loan documents, the Debtor will immediately be authorized to borrow the entire amount available for borrowing under the Commitment Letter; however, Debtor will only draw on an as needed basis.

21. Attached to the original of this Motion and filed with this Court as **Exhibit "C"** is the operating Budget for the period of January 2010 through April 2010. The Budget has been prepared by the Debtor and represents the Debtor's projections of those costs which are reasonable and necessary for the continued operation of its Property during the Budget period. The DIP Loan will be used to provide the liquidity necessary to fund the amounts set forth in the Budget.

22. The DIP Lender has reviewed the Budget and has no objection to the same.

**F.    Good Faith**

23. The Debtor and DIP Lender have negotiated the terms and conditions of the proposed credit extension in good faith; the terms and conditions of such credit extension are fair and reasonable and are supported by reasonably equivalent value. Any credit extended by the DIP Lender pursuant to the terms of this Motion will have been extended in "good faith" (as that term is used in § 364(e) of the Bankruptcy Code).

24. Upon court approval of this Motion, the Debtor and DIP Lender will execute the DIP loan documents. All terms not defined herein shall be as set forth in the Commitment Letter or subject to the mutual agreement of the Debtor and the DIP Lender.

25. Upon entry of a non-appealable order approving the Motion, the Debtor agrees that the automatic stay of Bankruptcy Code § 362 shall be lifted to allow the DIP Lender and the Debtor to consummate this Loan.

## CERTIFICATE OF NECESSITY OF
## REQUEST FOR EMERGENCY PRELIMINARY HEARING

26. Continued operation of the business is essential to the filing of an effective and confirmable plan of reorganization and is in the best interest of the Debtor's creditors; however, continued operation requires additional advances from the DIP Lender to pay operating expenses of the Property.

27. In order to continue vital operations, the Debtor must continue to cover the shortfall related to the operation of the business. The DIP Loan is needed to pay these critical past and currently due bills, as illustrated in the Budget.

28. The Debtor estimates that approximately 15 minutes will be necessary for a hearing on this Motion.

29.     The Debtor and counsel are prepared to appear on two hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

**WHEREFORE**, Debtor respectfully requests this Court enter an Order granting the following:

A.     Authorization to the Debtor to borrow up to Three Hundred Fifty Thousand Dollars ($350,000.00) from the DIP Lender on a secured basis, pursuant to the terms of this Motion and Commitment Letter;

B.     Authorization to the Debtor to obtain such post-petition financing and incur post-petition indebtedness, which financing and indebtedness due and owing by the Debtor to the DIP Lender shall (i) pursuant to § 364(c)(1) of the Bankruptcy Code, have priority (except as to agreed Carve-Out for the U.S. Trustee fees) over any and all administrative expenses; and (ii) pursuant to § 364(d)(1) of the Bankruptcy Code, be secured by the DIP Liens in the real and personal property of the Debtor and SIO, which liens and security interests shall include, but not by way of limitation, a first priority security interest in all litigation claims, rights of action, choses in action, and insurance claims of any type or description held by Debtor or SIO and by a first priority mortgage lien upon and security interest in all real and personal property owned by Debtor;

C.     Authorizing the Debtor to execute a mortgage, security agreement, loan agreement and such other documents, instruments, and agreements as are necessary to evidence the obligation to repay the DIP Loan made by the DIP Lender pursuant to this Motion, to grant and perfect liens on the pledged assets and proceeds, and to perform all such other acts as

reasonably may be required in connection with the DIP Loan to be provided pursuant to this Motion;

D.      Granting the Debtor such other and further relief as the Court deems necessary, appropriate, equitable, proper and consistent with the terms of this Motion.

**RESPECTFULLY SUBMITTED** this 19th day of January 2010.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No. 984469
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
Mariane L. Dorris
Florida Bar No. 173665
Victoria Minks
Florida Bar No. 64388
390 N. Orange Avenue, Suite 600
P. O. Box 3353 (32802-3353)
Orlando, Florida 32801
Tel: 407-481-5800
Fax: 407-481-5801
Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:                                          CASE NO. 6:10-bk-00578

SHERWOOD FARMS, INC.,                           CHAPTER 11

                    Debtor.
_____/

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing **SHERWOOD FARMS, INC.'S MOTION FOR AUTHORITY TO OBTAIN CREDIT AND INCUR DEBT**, together with all exhibits, has been furnished by electronic or U.S. First Class mail, postage prepaid, to: Sherwood Farms, Inc., c/o Julian Benscher, 13613 Honeycomb Rd., Groveland, FL 34736; Old Southern Bank, 250 N. Orange Ave., Orlando, FL 32801; Pentagon Apollo, Ltd., c/o Harneys Corporate Services Limited, Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands; Andrew M. Brumby, Esq., a/f Pentagon Apollo, Ltd., P.O. Box 4956, Orlando, Florida 32802-4956; Pentagon Capital Mgmt PLC, 25/26 Albemarle St., London, England W1S 8HK UK; the U. S. Trustee, 135 W. Central Boulevard, Suite 620, Orlando, Florida 32801; and the secured creditors and the 20 largest unsecured creditors as shown on the matrix attached to the original motion filed with the Court, this 19th day of January 2010.

                              /s/ R. Scott Shuker
                              R. Scott Shuker, Esquire

January 11, 2010

R. Scott Shuker, Esq.
Latham, Shuker, Eden & Beaudine, LLP
390 N. Orange Ave., Ste. 600
P.O. Box 3353 (32802-3353)
Orlando, Florida 32801

      Re:     Debtor-in-Possession Loan from Pentagon Apollo, Ltd. ("Pentagon") to
              Sherwood Farms, Inc. ("SFI") and Sherwood Investments Overseas
              Limited ("SIO") (collectively, the "Borrowers")

Dear Mr. Shuker:

      Subject to documentation acceptable to Pentagon and its counsel (only upon
execution of such documentation will Pentagon be definitively committed to the making
such loan), Pentagon agrees to provide debtor-in-possession financing (the "Loan") to
Borrowers subject to the following terms and conditions:

1.    Definitions.  In addition to the terms defined elsewhere in this commitment, as
      used herein the following terms shall have the following meanings:

      a.    Borrowers.  Borrowers shall mean SFI and SIO, each of which is to be a
          debtor-in-possession in the jointly administered Chapter 11 case
          (collectively, the "Case") to be filed on or around January 19th, 2010
          before the United States Bankruptcy Court for the Middle District of
          Florida (the "Bankruptcy Court").

      b.    Closing Date and Effective Date.  The later of:  (i) the date upon which the
          Loan is approved by Order of the Bankruptcy Court; and (ii) the date upon
          which all conditions to making the Loan herein are satisfied, including but
          not limited to, the delivery of all required loan documents.

      c.    Commitment Expiration Date.  February 26th, 2010.

      d.    Loan Fee.  The Borrower shall pay a loan fee of two (2) percentage points
          of the maximum principal amount of the Loan, which fee will be fully
          earned, and payable in full at, the time of Closing.

      e.    Interest Rate.  The interest rate on the Loan shall be fixed at seven (7)
          percent prior to any default, but shall be twelve (12) percent after default.

      f.    Maturity Date.  The earlier of (i) the first anniversary of the Effective
          Date; (ii) the date upon which the Case is (A) dismissed or (B) converted
          to a case under Chapter 7 of the U.S. Bankruptcy Code; or (iii) the
          Effective Date of any confirmed Chapter 11 plan in the Case.

EXHIBIT A

g.  Principal Amount. The principal amount of the Loan shall be $500,000.00. The amount of $350,000.00 shall be available for SFI and $150,000.00 for SIO.

2.  Payments of Principal and Interest.

    a.  Interest. The Loan shall bear interest at the Interest Rate.

    b.  Monthly Payments. Commencing on the first day of the first month following Effective Date, Borrowers shall make payments of interest only, computed on the then-outstanding principal balance of the Loan, in arrears.

    c.  Prepayment. The Loan may be prepaid in whole or in part at any time. There will be no discounts or penalties for prepayment.

3.  Collateral. The Loan shall be secured, pursuant to 11 U.S.C. § 364 (d), by a first priority mortgage lien upon and security interest in all assets (whether real or personal) of SIO and SFI, which liens and security interests shall include, but not by way of limitation, a first priority security interest in all litigation claims, demands, rights of action, choses in action, and insurance claims of any type or description held by SIO and by a first priority mortgage lien upon and security interest in all real and personal property owned by SFI.

4.  Conditions Precedent to the Loan. Pentagon's obligation to advance funds pursuant to the Loan is subject to each of the following conditions precedent:

    a.  Bankruptcy Court Approval. Entry of a written order (the "Financing Order") by the Bankruptcy Court approving the Loan, to be entered no later than February 26th, 2010.

    b.  Loan Documents. A loan agreement, promissory note, financing statements, and such other documents and agreements as Pentagon or its counsel may require to evidence and secure the Loan, all in form satisfactory to Pentagon and its counsel.

    c.  Priority Lien. The Financing Order shall provide that Pentagon's lien on the Collateral shall be, at all times during the life of the Loan, a first priority lien, superior in dignity and priority to any existing or future liens on the Collateral as set forth in paragraph 3 above.

    d.  Administrative Priority. All amounts extended by Pentagon shall be entitled to respective super priority administrative expenses status pursuant to Bankruptcy Code § 364 (c), subject only to unpaid U.S. Trustee Fees.

EXHIBIT A

e.  Budget. Borrower shall have prepared a budget for the use of the Loan funds, which budget shall have been approved by Pentagon (the "Budget").

5.  Advances. Pentagon shall make advances under the Loan, no more than once per calendar month, pursuant to the Budget, and in accordance with the other conditions and requirements to be set forth in the Loan documents.

6.  Cost and Expenses. Borrowers shall pay at Closing all costs and expenses incurred in connection with the Loan, including, without limitation, all closing costs and all of Pentagon's costs and expenses incurred in connection therewith, including Pentagon's out-of-pocket costs and attorneys' fees.

7.  Governing Law. This commitment and the loan documents to be delivered pursuant hereto shall be governed by the laws of the State of Florida without reference to the choice of law rules or conflict of law rules of that state.

8.  Counterparts/Electronic Delivery. This letter may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument. Moreover, any party hereto may sign a counterpart of this letter and deliver such counterpart by facsimile or other electronic transmission and the other parties shall be entitled to rely upon a counterpart delivered in such a manner as an original for all purposes.

9.  Miscellaneous. This letter supersedes and replaces all prior written and oral discussions regarding the terms and conditions of the Loan. Those terms not covered by this letter or made clear hereby are subject to the mutual agreement of the parties. By signing this letter below the Borrowers agree to accept the terms hereof and to close the Loan with Pentagon. If the Loan contemplated hereunder is not closed or funded for any reason, the Borrower shall pay on demand all legal expenses and out-of-pocket expenses of Pentagon incurred in connection with this letter and the Loan. A copy of this letter signed by the Borrowers should be returned to the Pentagon no later than the close of business on January 12th, 2010. If a signed copy of this Commitment Letter is not delivered to the Pentagon by the close of business on January 12th, 2010, Pentagon's obligations hereunder shall be null and void. No direct or indirect assignment of any rights or obligations hereunder by Borrowers is permitted without the express written consent of Pentagon.

EXHIBIT A

Please indicate your acceptance of the terms of this commitment by signing below.

Very truly yours,

Pentagon Apollo, Ltd.

By: _Unt. Linn / Did._

Its: ~~of see Director~~ *Pentagon Bere.*

*signing for Hamilton and Warrick Fiduciary Services corporate Director of Pentagon Bermm.*

ACCEPTED AND AGREED this _____ day of January , 2010.

BORROWERS:

Sherwood Farms, Inc.

By: _____
Its: _____

Sherwood Investments Overseas Limited

By: _____
Its: _____

Please indicate your acceptance of the terms of this commitment by signing below.

Very truly yours,

Pentagon Apollo, Ltd.

By: _____
Its: _____

ACCEPTED AND AGREED this _____ day of January , 2010.

BORROWERS:

Sherwood Farms, Inc.

By: _____
Its:  PRESIDENT

Sherwood Investments Overseas Limited

By: _____
Its:  AUTHORIZED  SIGNATORY

EXHIBIT A
4

| | |
|---|---|
| **In re:** | **CASE NO. 6:10-bk-00578** |
| **SHERWOOD FARMS, INC.,** | **CHAPTER 11** |
| **Debtor.** | |
| _____/ | |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING FR4OM THE DIP LENDER ON AN INTERIM BASIS; (II) PROVIDING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER; AND (III) APPROVING THE FORM AND METHOD OF NOTICE THEREOF; AND (IV) SCHEDULING A FINAL HEARING

THIS MATTER came before this Court upon a motion (the "DIP Motion")[1] (Doc. No. ___) by the above-captioned debtor (the "Debtor"), seeking, among other things, entry of the interim order (this "Interim Order") authorizing, *inter alia*, the Debtor to obtain post-petition financing from Pentagon Apollo, Ltd. ("Pentagon" or the "DIP Lender") on an interim basis, pursuant to the terms of the loan documents, as defined in the Commitment Letter and only to the extent necessary to avoid immediate and irreparable harm.

The Court, having considered the DIP Motion, the proffered evidence presented by the Debtor in support of the DIP Motion, and the evidence submitted at the interim hearing on the DIP Motion held on _____ (the "Interim Hearing") and having found due and proper notice of the DIP Motion, it is hereby

---

[1] Capitalized terms not defined herein shall have the same meaning as ascribed in the Commitment Letter. In the event of any inconsistency between the terms and conditions of the loan documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

EXHIBIT B

**ORDERED:**

**A.**     The DIP Motion is granted on an interim basis on the terms set forth in this Interim Order through _____ (the "Interim Period") and the loan documents are hereby approved for performance by the Debtor and the DIP Lender during the Interim Period.

**B.**     **Debtor's Acknowledgements and Agreements.**  Without prejudice to the rights of parties in interest, as set forth below, the Debtor admits, stipulates, acknowledges and agrees that:

(a)     **Authorization to Borrow.**  In order to enable the Debtor to continue to operate its business during the Interim Period, subject to the terms and conditions of this Order, the Commitment Letter, the other loan documents and the Budget (which may not be materially amended or modified during the Interim Period), the Debtor is authorized under the loan documents to borrow up to the Loan Amount.

(b)     **Application of DIP Proceeds.**  The proceeds of the loan document (net of any amounts used to pay fees, costs and expenses under the Commitment Letter) shall be used, in each case, in a manner consistent with the terms and conditions of the loan documents, and in accordance with the Budget and this Interim Order, subject to the Permitted Budget Variance.

(c)     **Grant of DIP Liens.**  Effective immediately upon the entry of the Interim Order, the DIP Lender is hereby granted, pursuant to sections 361, 362, 363(c)(2)-(3), and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, first priority, priming and perfected liens in the Property (as defined in the Commitment Letter).  The DIP Lender's liens and security interests in the Property are collectively referred to as the "DIP Liens."

(d)    **DIP Lien Priority.**  Except as set forth in this Interim Order, the DIP Liens granted pursuant to the loan documents and this Interim Order shall be senior in priority and shall not be made subject to, or *pari passu* with any lien or security interest.

(e)    **Senior Claim Status.**  During the Interim Period pending the entry of a Final Order, all DIP obligations shall be an allowed senior claim, pursuant to Section 364(c)(1) of the Bankruptcy Code (the "DIP Lender's Superpriority Claim") with priority over all existing liens, any and all administrative expense claim and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever.

C.    **Authorization to Use Proceeds of Loan Documents.**  Pursuant to the terms and conditions of this Interim Order, the loan agreements and the Commitment Letter, and in accordance with the budget attached hereto as **Exhibit A** (which may be modified prior to entry of a Final Order, but which may be otherwise modified consistent with the terms of the Commitment Letter and this Interim Order and acceptable to the DIP Lender, the "Budget"), the Debtor is authorized to use the advances under the Commitment Letter during the period commencing immediately after the entry of this Interim Order and terminating upon the Maturity Date.  The DIP Lender agrees to fund certain of the Debtor's business consistent with the Budget, provided that the total amount expended each month per line item does not exceed 105% of the amount provided for in the Budget for such line item expense (the "Permitted Budget Variance").  The Debtor may use the DIP Loan for payment of expenses other than those set forth in the Budget or in amounts greater than the Permitted Budget Variance only with prior written consent of the DIP Lender.

EXHIBIT B

**D. Maturity Date.** Subject to the provisions of this Order, all DIP Obligations of the Debtor to the DIP Lender shall be immediately due and payable, and authority to use the proceeds of the Commitment Letter shall cease on the Maturity Date, meaning the date that is twelve months from the date of the closing on the Commitment Letter.

**E. Superpriority Claim.** The DIP Lender is hereby granted a superpriority claim as provided for in Section 507(b) of the Bankruptcy Code (the "Prepetition Superpriority Claim") with priority in payment over any and all administrative expenses of all kinds specified or ordered under any provision of the Bankruptcy Code, other than the DIP Lender's Superpriority Claim.

**F. Post-Petition Lien Perfection.** This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein.

**G. Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.** Nothing in this Interim Order or the Commitment Letter shall prejudice whatever rights the Official Committee of Unsecured Creditors (the "Statutory Committee") or any other party in interest with requisite standing (other than the Debtor) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of any of the Debtor's secured creditors in and to the Pre-Petition Property, or (ii) the validity, allowability, priority, status or amount of the

4

Pre-Petition Secured Obligations, or (iii) the validity, allowability, priority, status or amount of the Pre-Petition Unsecured Obligations; (b) to bring suit against the senior lender (or any of the Protected Parties) in connection with or related to the Pre-Petition Secured obligations; provided, however, that, unless the Statutory Committee or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection, claim or challenge, including, without limitation, any claim against the secured lenders or any of the Protected Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Secured Obligations or against any of the Protected Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Unsecured Obligations (including, but not limited to, those under Sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Lenders or any of the Protected Parties), within (a) 60 days following the appointment of a Statutory Committee (if such a Committee has been appointed) or (b) if no Statutory Committee is appointed, (i) 75 days following the entry of the Final Order approving the Commitment Letter, or (ii) 10 business days prior to the date of the auction of any Collateral (collectively, (a) and (b) shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that a challenge, claim or objection is not raised during the Challenge Period or if a timely challenge, claim or objection has been filed, the date after entry of the Final Order resolving such challenge, claim or objection, shall be referred to as the "Challenge Period Termination Date"). Upon the Challenge Period Termination Date, any and all of such challenges, claims and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in a Successor Case, and any other party in interest) shall be deemed to be forever waived, released and barred,

EXHIBIT B

and the Pre-Petition Secured Obligations and Pre-Petition Unsecured Obligations shall be deemed to be allowed in full and the Pre-Petition Secured Obligations shall be deemed to be allowed as a fully secured claim within the meaning of Section 506 of the Bankruptcy Code for all purposes in connection with this Chapter 11 Case and the Debtor's Stipulations shall be binding on all creditors, interest holders and parties in interest.

**H.** **Payment of Post-Petition Interest and Expenses.**

(i)     The Debtor is authorized to pay, and the DIP Lender is entitled to receive (a) any and all interest, fees and costs under the loan documents and costs and expenses of the DIP Lender in connection with this Chapter 11 case, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out-of-pocket expenses will be paid by the Debtor.

**I.** **Events of Default and Rights and Remedies.**     Failure to make payments when due, the appointment of a Chapter 11 Trustee, dismissal of this case or the SIO case, or conversion of the case or the SIO case to Chapter 7.  The occurrence of any "Event of Default" under the Commitment Letter shall constitute an immediate Event of Default under this Interim Order.  The rights and remedies of the DIP Lender specified in the loan documents are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the loan documents or otherwise.

**J.** **Carve-Out.**  Upon the occurrence and during the continuation of an Event of Default, the claims and liens granted hereunder to the DIP Lender and those ranking junior in priority to such liens and claims shall be subject to the Carve-Out.  As used in this Order, "Carve-

6

Out" means the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee, pursuant to 28 U.S.C. § 1930(a).

**K.** **Other Rights and Obligations.**

(a) **Business Judgment and Good Faith Pursuant to Section 364(e).** Pursuant to Section 364(e) of the Bankruptcy Code, the DIP Lender has acted in good faith in agreeing to extend the post-petition financing to the Debtor. Moreover, the terms of the Loan Documents are fair under the circumstances and all pre-petition secured creditor interests are adequately protected.

(b) **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. To the extent there is an inconsistency between this Order and the Commitment letter and all related documents, this Interim Order shall govern.

(c) **Amendment.** The Debtor and the DIP Lender may amend or waive any provision of the loan documents, provided that such amendment or waiver, in the judgment of the Debtor and the DIP Lender, is either non-prejudicial to the rights of third parties or is not material.

**DONE AND ORDERED**

_____
**KAREN S. JENNEMANN**
**UNITED STATES BANKRUPTCY JUDGE**

7

Copies to:

Sherwood Farms, Inc., c/o Julian Benscher, 13613 Honeycomb Rd., Groveland, FL 34736;

R. Scott Shuker, Esq., Mariane L. Dorris, Esq. and Victoria I. Minks, Esq., Latham Shuker Eden & Beaudine, LLP (attorneys for Debtor), P.O. Box 3353, Orlando, FL, 32802-3353;

Old Southern Bank, 250 N. Orange Avenue, Orlando, FL 32801;

Pentagon Apollo, Ltd., c/o Harneys Corporate Services, Ltd., Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands;

Pentagon Capital Mgmt PLC, 25/26 Albemarle St., London, England W1S 8HK UK;

Andrew M. Brumby, Esq., a/f Pentagon Apollo, Ltd., P.O. Box 4956, Orlando, Florida 32802-4956;

Local Rule 1007-2 Parties-in-interest List; and

U.S. Trustee, 135 W. Central Boulevard, Suite 620, Orlando, FL 32801.

EXHIBIT B

# Sherwood Farms, Inc.

## 4 Month Budget - Cash In / Cash Out

*January 2010*

| *CASH IN MONTHLY* | | *CASH OUT MONTHLY* | |
|---|---|---|---|
| $150,000 | Sales | $78,000 | Payroll |
| | | $30,000 | Legal |
| | | $15,000 | Plant Restocking |
| | | $3,000 | Utilities |
| | | $900 | Cell Phones |
| **$150,000** | **Total** | $400 | Office Phones |
| | | $4,600 | Property Ins. |
| | | $2,800 | Workers Comp |
| | | $66,000 | Propane / Diesel |
| | | $5,000 | Supplies / Materials |
| | | $4,500 | Chem/Fert/Potting Media |
| | | $3,500 | Fuel for Truck Deliveries |
| | | $1,000 | Smaller misc expenses |
| | | **$214,700** | **Total** |

*February 2010*

| *CASH IN MONTHLY* | | *CASH OUT MONTHLY* | |
|---|---|---|---|
| $160,000 | Sales | $78,000 | Payroll |
| | | $30,000 | Legal |
| | | $30,000 | Plant Restocking |
| | | $3,000 | Utilities |
| | | $900 | Cell Phones |
| **$160,000** | **Total** | $400 | Office Phones |
| | | $4,600 | Property Ins. |
| | | $2,800 | Workers Comp |
| | | $50,000 | Propane / Diesel |
| | | $5,000 | Supplies / Materials |
| | | $4,500 | Chem/Fert/Potting Media |
| | | $3,500 | Fuel for Truck Deliveries |
| | | $1,000 | Smaller misc expenses |

EXHIBIT C

$213,700   *Total*

**March 2010**

| <u>**CASH IN MONTHLY**</u> | <u>**CASH OUT MONTHLY**</u> |
|---|---|
| $170,000   Sales | $78,000   Payroll |
| | $30,000   Legal |
| | $45,000   Plant Restocking |
| | $3,000   Utilities |
| | $900   Cell Phones |
| **$170,000   Total** | $400   Office Phones |
| | $4,600   Property Ins. |
| | $2,800   Workers Comp |
| | $40,000   Propane / Diesel |
| | $5,000   Supplies / Materials |
| | $4,500   Chem/Fert/Potting Media |
| | $3,500   Fuel for Truck Deliveries |
| | $1,000   Smaller misc expenses |
| | **$218,700   Total** |

**April 2010**

| <u>**CASH IN MONTHLY**</u> | <u>**CASH OUT MONTHLY**</u> |
|---|---|
| $140,000   Sales | $78,000   Payroll |
| | $30,000   Legal |
| | $30,000   Plant Restocking |
| | $3,000   Utilities |
| | $900   Cell Phones |
| **$140,000   Total** | $400   Office Phones |
| | $4,600   Property Ins. |
| | $2,800   Workers Comp |
| | $16,000   Propane / Diesel |
| | $3,500   Supplies / Materials |
| | $4,000   Chem/Fert/Potting Media |
| | $3,000   Fuel for Truck Deliveries |
| | $1,000   Smaller misc expenses |
| | **$177,200   Total** |

EXHIBIT C

Amerigas
PO Box 105018
Atlanta, GA 30348

BWI
PO Box 1328
Plymouth, FL 32768

Bank of America
7682 Dr. Phillips Blvd.
Orlando, FL 32819

Best Plant Nursery
1757 Plymouth Sorrento Rd
Apopka, FL 32704

Ceramo Company
PO Drawer 485
Jackson, MO 63755

Chase Credit Card
PO Box 15153
Wilmington, DE 19886

Floralife
751 Thunderbolt Drive
Walterboro, SC 29488

IC Industries
PO Box 919271
Orlando, FL 32891

Industrial Battery
& Charger
PO Box 602104
Charlotte, NC 28260

John Henry Company
75 Remittance Drive-3111
Chicago, IL 60675

Label It
10100 NW 116th Way
Miami, FL 33178

Packaging Corp of America
3785 Bryn Mawr Street
Orlando, FL 32808

ProSource One
2601 W Orange Bl Trail
Apopka, FL 32712